UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARE ORIGIN, INC.,

    Plaintiff,

v.

UNITED STATES OF AMERICA,
DEPT. OF HEALTH & HUMAN SERVICES ET AL.,

    Defendant.
_____/

Case No. 14-cv-14686

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
MICHAEL J. HLUCHANIUK

**OPINION AND ORDER GRANTING MOTION TO DISMISS FEDERAL DEFENDANTS [15] AND DISMISSING COMPLAINT FOR LACK OF SUBJECT-MATTER JURISDICTION**

**I. INTRODUCTION**

On December 11, 2014, Plaintiff, Care Origin, Inc., filed a Complaint [1] against United States of America Department of Health & Human Services, U.S. Department of Treasury's Community Health Accreditation Program, Centers for Medicare and Medicaid Services, and National Government Services, Inc. (collectively, "Federal Defendants"), as well as PSAVD, LLC and Cherry Catral (collectively, "Defendants-Counter Plaintiffs"). Dkt. No. 1, pp. 2–3 (Page ID # 2–3). Care Origin sought a declaratory judgment that it was not liable for repaying Medicare overpayments and included three other counts related to misrepresentation and damages. *See id.*, pp. 3–8 (Page ID # 3–8). Since filing, Care Origin has voluntarily dismissed Defendant Community Health Accreditation Program. *See* Dkt. No. 17.

This matter is before the Court on the Federal Defendants' Motion to Dismiss [15] pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, filed August 12, 2015. Dkt. No. 15., pp. 1–2 (Page ID # 79–80). Neither the Care Origin, nor the

Defendants-Counter Plaintiffs filed a response to Federal Defendants' Motion. For the reasons discussed herein, the Court will **GRANT** the Federal Defendants' Motion for Dismissal [15], and **DISMISS** Federal Defendants from this action **WITHOUT PREJUDICE**.

## II. BACKGROUND

Care Origin operated a home health agency that participated in Medicare and Medicaid. Dkt. No. 1, p. 4, ¶ 17 (Page ID # 4). In September 2010, Care Origin sold its operations to PSAVD, LLC (PSAVD), and filed paperwork with Centers for Medicare & Medicaid Services (CMS) for approval of the change in ownership. Dkt. No. 1-1, p. 9 (Page ID # 20). The Asset Purchase Agreement between the parties provided that closing would take place within 30 days of the agreement's signing and that Care Origin would continue operating the home health agency until closing. Dkt. No. 15-2, p. 8 (Page ID # 119). CMS approved the parties' change in ownership on September 23, 2011, with an effective date of September 15, 2010. Dkt. No. 15-3, p. 1 (Page ID # 124). Under the change of ownership, the existing provider's agreement was automatically assigned to the new owner, who was then subject to all terms and conditions of the existing agreement. *See id*.

In April 2011, Care Origin entered into an agreement with PSAVD that allowed PSAVD to provide patient services and bill CMS using Care Origin's provider identifier. Dkt. No. 1-1, p. 9 (Page ID # 20). Thereafter, CMS payments were deposited into Care Origin's bank account and Care Origin made payments to PSAVD. *See id*. Some of the bills submitted using Care Origin's provider identifier included Requests for Anticipated Payments (RAPs) from the home health agency. Dkt. No. 1-1, p. 10 (Page ID # 21); Dkt. No. 15-6, pp. 2–3, ¶¶ 2–4 (Page ID # 132–33). Payments were made to Care Origin's bank account in response to RAPs from June

through October 2011. *See* Dkt. No. 15-6, pp. 8–9, 22–23, 35, 48, 61–62, 74, 86–87, 99 (Page ID # 138–39, 152–53, 165, 178, 191–92, 204, 216–17, 229).

After approving the change in ownership, CMS notified National Government Services (NGS), the Medicare Administrative Contractor for home health agencies in Michigan, about the ownership change on September 23, 2011. Dkt. No. 15-4 (Page ID # 127). That November, NGS attempted to perform two unannounced site visits at PSAVD to ensure that the agency was still operational. Dkt. No. 15-5, p. 1 (Page ID # 128). Upon finding that PSAVD was not operational, NGS revoked the agency's Medicare Billing Privileges, effective November 28, 2011. *See id*.

NGS subsequently attempted to recoup the outstanding RAP overpayments associated with the provider identifier used by Care Origin and PSAVD. *See* Dkt. No. 15-6, pp. 5–107 (Page ID # 135–237). NGS sent eight letters from December 2011 through April 2012, seeking total repayment related to RAPs in the amount of $262.909.14, plus interest. *See id*. Care Origin responded to the first notice made on December 19, 2011, to inform NGS that the home health agency had been sold to PSAVD and the overpayment letter would be forwarded accordingly. *See id*., p. 115 (Page ID # 245).

Additionally, NGS sent a letter to Care Origin in December 2012, stating that an additional overpayment in the amount of $172,718 existed, independent of RAP overpayments, because Care Origin had not submitted its Medicare Cost Report for the fiscal year ending November 28, 2011. *See id*. at 108–10 (Page ID # 238–40). When Care Origin failed to respond to this notice, NGS referred the debt to the Department of Treasury for collection in February 2013. *See id.* at 111–114 (Page ID # 241–44).

Care Origin filed the present Complaint on December 11, 2014, Dkt. No. 1 (Page ID # 1), after its previous civil actions were dismissed by this Court without prejudice in October 2012, November 2013, and September 2014.[1]

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to challenge the court's subject matter jurisdiction. "Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Products, Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). A facial attack questions the sufficiency of the pleadings, taking all allegations in the complaint as true. *Id*. Conversely, in a factual attack, there is no presumptive truthfulness and the district court must weigh conflicting evidence to determine whether or not subject-matter exists. *Id*.

Under Rule 12(b)(1), the plaintiff bears the burden of proving jurisdiction in order to survive the motion. *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Sweeton v. Brown*, 27 F.3d 1162, 1169 (6th Cir. 1994) (quoting *United States v. Siviglia*, 686 F.2d 832, 835 (10th Cir. 1981), *cert. denied*, 461 U.S. 918 (1983)).

### IV. ANALYSIS

In its Complaint, Care Origin asserts that the Court has the power to adjudicate this matter under the Federal Claims Collection Act, 31 U.S.C. § 3711 *et. seq*. Dkt. No. 1, p. 5 (Page

---

[1] Case No. 4:12-cv-12307-GAD-MJH (dismissed without prejudice after Plaintiff failed to serve Defendants within 120 days after filing the complaint); Case No. 2:13-CV-11944-GAD-MJH (dismissed without prejudice after Plaintiff's counsel failed to attend status conference and was unable to be contacted); Case No. 2:14-CV-11259-GAD-MJH (dismissed without prejudice for failure to prosecute).

4

ID # 5). However, as Federal Defendants correctly point out, the Federal Claims Collection Act does not provide for a private right of action against the United States. *See* Dkt. No. 15, p. 16 (Page ID # 102); 31 C.F.R. § 900.8 ("The standards in this chapter do not create any right or benefit, substantive or procedural, enforceable at law or in equity by a party against the United States, its agencies, its officers, or any other person, nor shall the failure of an agency to comply with any of the provisions of parts 900–904 of this chapter be available to any debtor as a defense.").

Thus, it is necessary to see if Care Origin's claims lie under the Medicare Act. "Section 405(h) of the Social Security Act, made applicable to the Medicare Act by 42 U.S.C. § 1395ii, strips courts of general federal question jurisdiction under 28 U.S.C. § 1331 for claims arising under the Medicare Act." *Triad at Jeffersonville I, LLC v. Leavitt*, 563 F. Supp. 2d 1, 12 (D.D.C. 2008). Specifically, the section states:

> No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h). "As so interpreted, § 405(h)'s bar reaches beyond ordinary administrative law principles of 'ripeness' and 'exhaustion of administrative remedies'—doctrines that normally require channeling a legal challenge through the agency—by preventing the application of exceptions to those doctrines." *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 2 (2000).

Section 405(g)[2] provides "the only avenue for judicial review" of claims arising under the Medicare Act. *See Heckler v. Ringer*, 466 U.S. 602, 617 (1984). "[T]he exhaustion requirement

---

[2] Section 405(g) was incorporated into the Medicare Act by 42 U.S.C. § 1396i(b)(2).

5

of § 405(g) consists of [1] a nonwaivable requirement that a 'claim for benefits shall have been presented to the Secretary,' and [2] a waivable requirement that the administrative remedies prescribed by the Secretary be pursued fully by the claimant." *Id*. (citations omitted); *see also Cathedral Rock of N. Coll. Hill, Inc. v. Shalala*, 223 F.3d 354, 359 (6th Cir. 2000) ("The Supreme Court … held that 'all aspects' of a present or future claim for benefits must be 'channeled' through the administrative process.").

Thus, a party wishing to bring a claim arising under the Medicare Act must have presented a claim to the Secretary and exhausted its administrative remedies prior to filing suit in federal court. *See, e.g., Buckner v. Heckler*, 804 F.2d 258, 258 (4th Cir. 1986) (finding that an overpayment constituted disputed Medicare benefits and affirming dismissal of a declaratory judgment action for failure to exhaust administrative remedies). "The fact that the agency might not provide a hearing for that *particular contention,* or may lack the power to provide one … is beside the point because it is the 'action' arising under the Medicare Act that must be channeled through the agency." *Illinois Council*, 529 U.S. at 23, (internal citations omitted); *see also BP Care, Inc. v. Thompson*, 398 F.3d 503, 511 (6th Cir. 2005) ("[Section] 405(h) applies unless requiring agency review of the plaintiff's claim would effectively mean 'no review at all.' ")

### A. Care Origin's Claims Arose Under the Medicare Act

The Supreme Court determined in *Ringer* that a claim arises under the Medicare Act if "both the standing and the substantive basis for the presentation" of the claim is the Medicare Act. 466 U.S. at 615 (quoting *Weinberger v. Salfi*, 422 U.S. 749, 760–61 (1975)). Additionally, a claim may arise under the Act if it is "inextricably intertwined" with a claim for Medicare benefits. *See id.* at 624.

The present action arises under the Medicare Act, as Care Origin has challenged Federal Defendants attempts to collect Medicare overpayments and its liability for those overpayments. *See* Dkt. No. 1, pp. 3–4, ¶¶ 12, 16 ("This action further arises out of the Medicare and Medicaid enrollment, provider and participant documents, rules and regulations resulting in provider number 1245342310 and CCN: 23-7545."). Accordingly, the Medicare Act's judicial review limitations apply.

### B. Plaintiff Failed to Meet the Exhaustion Requirement of 405(g)

Even read in the light most favorable to Care Origin, the facts alleged in the Complaint satisfy neither of the two criteria necessary for judicial review of a Medicare determination: presentation of a claim to the Secretary and full pursuit of administrative remedies.

Only one letter has been submitted regarding to Care Origin's contention that PSVAD was responsible for the overpayments. *See* Dkt. No. 15-6, p. 115 (Page ID # 245). In that letter, dated January 5, 2012, Care Origin notified NGS that it had been sold to PSAVD and that CMS had approved its change in ownership. *Id*. The letter further stated that Care Origin would forward the overpayment letter to PSAVD and request that they comply. *Id*. Care Origin did not dispute the overpayment or liability. *See id*. Thus, this letter does not present a claim to the Secretary, a nonwaivable requirement prior to seeking judicial review. Additionally, there is no evidence that Care Origin took any steps to exhaust its administrative remedies or that the Secretary has waived this requirement.

### V. Conclusion

For the reasons discussed above, the Court finds there is no subject-matter jurisdiction against Federal Defendants in this case. The Court **HEREBY GRANTS** the Motion to Dismiss [15]. Additionally, since all remaining parties are non-diverse and no federal claims remain, the

Court **HEREBY DISMISSES** this action **WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.

IT IS SO ORDERED.

Dated:  October 20, 2015  
       Detroit, Michigan

s/Gershwin A. Drain  
GERSHWIN A. DRAIN  
United States District Judge